**TRENK, DiPASQUALE,**
**DELLA FERA & SODONO, P.C.**
347 Mount Pleasant Avenue
West Orange, New Jersey 07052
(973) 243-8600
Richard D. Trenk (RT 6874)
Thomas M. Walsh (TW 0645)
Attorneys for Debtor-in-Possession,
Coral Dyeing & Finishing Corp.

### UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>CORAL DYEING & FINISHING CORP.,<br><br>Debtor. | Chapter 11<br><br>Case No. 13-29792(MS)<br><br>Honorable Morris Stern<br><br>Hearing Date:  December 10, 2013<br>                        at 12:00 p.m. |

**APPLICATION IN SUPPORT OF DEBTOR'S MOTION FOR THE ENTRY OF ORDER (A) AUTHORIZING THE SALE OF THE DEBTOR'S REAL PROPERTY, FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (B) APPROVING THE FORM AND MANNER OF NOTICE OF THE SALE; (C) APPROVING THE DEBTOR'S LEASE OF A CERTAIN PORTION OF THE WAREHOUSE FACILITY FROM THE BUYER OF THE REAL PROPERTY; AND (D) GRANTING OTHER AND RELATED RELIEF**

TO:   THE HONORABLE MORRIS STERN
         UNITED STATES BANKRUPTCY JUDGE

Coral Dyeing & Finishing Corp., the debtor and debtor-in-possession herein ("Debtor"), by and through its undersigned counsel, Trenk, DiPasquale, Della Fera & Sodono, P.C., submits this Application in support of its motion pursuant to sections 105(a), 363(b), (f) and (m), 365 and 541(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") for the entry of Order (A) authorizing the sale of the Debtor's real property to 555 E. 31 Paterson LLC ("Buyer"), free and clear of all liens, claims, interests and encumbrances, pursuant to the terms of the Agreement of Sale dated as of November 14, 2013 (the "Sale Agreement") between the Debtor and Buyer (the "Sale"); (B) approving the form and manner of notice of the Sale; (C) approving the Debtor's lease of a certain portion of the warehouse facility from the Buyer of the real property; and (D) granting other and related relief (the "Motion"); and respectfully states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334 and the District Court General Order of Reference dated July 23, 1984. This is a core proceeding under 28 U.S.C. § 157(b).

2. Venue of this case and the Motion in this judicial district is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief sought by the Motion are sections 105(a), 363(b), (f) and (m), 365(a) and 541(a) of the Bankruptcy Code.

## BACKGROUND

**The Chapter 11 Case**

4. On September 9, 2013 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its affairs as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No creditors' committee, trustee or examiner has been appointed in this case.

2

5. For a detailed explanation of the Debtor and the circumstances leading to its chapter 11 filing, the Debtor incorporates by reference herein the *Declaration of Frederick Dombrow, Jr. in Support of First Day Motions* (ECF Docket No. 11).

6. Founded in 1955 under the guidance of Fred Dombrow, Sr. ("Dombrow Sr."), a high-level textile manufacturer and machinist, Coral is largely responsible for transforming the City of Paterson, New Jersey into "Silk City," a global epicenter for textile manufacturing. Since its inception, the mission of Coral has been to create and utilize state-of-the-art machinery designed to save time, money, and labor in the textile trade.

7. During the 1980s, Dombrow Sr. was joined by his son, Frederick Dombrow, Jr. ("Dombrow Jr."). Beginning as a welder, Dombrow Jr. soon became a high-level machinist and hands-on chemist responsible for creating modernized fabric equipment that reduced the need for hard labor. Currently, Dombrow Jr. is the sole owner of Coral.

8. By the 1990s, Coral stood alone as the only remaining large industrial dye house in the City of Paterson. Coral presently employs forty-four (44) individuals, the majority of which are Paterson residents.

9. The Debtor has made significant progress since the Petition Date, which has allowed it to begin the second step of its rehabilitation effort – the solicitation of buyers for the Debtor's real property located at 555 East 31st Street, Paterson, New Jersey (the "Real Property").

10. After careful consideration, the Debtor has determined that it is in the best interests of the Debtor, its estate and its creditors to sell its Real Property. In order to maximize the value of the bankruptcy estate for all stakeholders, it is imperative that the Debtor sell the Real

3

Property, subject to higher and better offers at the hearing to approve the Sale. The Debtor has accepted the purchase offer of Buyer.

11. The Real Property is subject to a first mortgage lien in favor of MFC Partners, LLC ("MFC") in the principal amount of $1,250,000. In addition, second and third mortgage liens appear on the title report for the Real Property in favor of Paterson Restoration Corporation ("PRC") and Carson & Gebel Ribbons, Co. ("CGRC"), in the principal amounts of $200,000 and $320,000, respectively. Moreover, there are outstanding real estate taxes and water/sewer liens in favor of the City of Paterson with respect to the Real Property. The Debtor proposes to sell the Real Property free and clear of all liens, claims, interests and encumbrances, including the secured mortgage liens of MFC, PRC, CGRC and the City of Paterson, with all such liens, claims, interests and encumbrances to attach to the proceeds of the Sale.

**The Sale Agreement**

12. Over the past several months, the real estate broker, Emily Abdy Realty Group ("Emily Abdy"), has met with numerous potential purchasers of the Debtor's Real Property. We have received no other offers to purchase the Real Property. The Debtor's principal, bankruptcy counsel and Emily Abdy have spent considerable time attempting to negotiate final sale terms with each of the potential buyers, resulting in the executed Sale Agreement. The Debtor has determined that it is in the best interests of its estate and creditors to accept the Buyer's to purchase the Real Property, as it was for the highest price and the most beneficial terms. A copy of the Sale Agreement with the Debtor executed by the Buyer is attached hereto as Exhibit A.

13. The purchase price for the Real Property is $2,100,000, on the terms and conditions set forth in the Sale Agreement.

14. As a condition of the Sale, the Buyer shall execute a lease whereby Seller shall be permitted to lease approximately 70,000 of the 120,000 square feet in the existing warehouse ("New Lease"). The New Lease shall provide that Seller or its assignee shall pay to Buyer $2.50 per sq. ft., triple net (with Tenant to be responsible for its pro rata share of all property tax, insurance, and maintenance costs), for a period of ten (10) years (with 3% annual increases) with an option to renew for a second ten (10) year term at the same rental rate. Upon execution of the New Lease, Seller shall pay to Buyer a security deposit of $14,583.33 payable to the Buyer which in Seller's sole discretion may be deducted from the closing proceeds.

## RELIEF REQUESTED

15. In accordance with section 363(b)(1) of the Bankruptcy Code and Bankruptcy Rule 6004(f)(1), the Debtor seeks Court approval to sell the Real Property to the Buyer, subject to higher and better offers at the sale hearing on the Motion (the "Sale Hearing").

## APPLICABLE LEGAL AUTHORITY

**A.    The Sale of the Real Property Free and Clear of All Liens, Claims, Interests and Encumbrances Should Be Approved.**

16. Section 363(b)(l) of the Bankruptcy Code provides that a trustee, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. . . ." 11 U.S.C. § 363(b)(l); *see also* Fed. R. Bankr. P. 6004(f)(1) (authorizing sales outside of the ordinary course of business to be conducted privately or by public auction). A debtor-in-possession is given these rights by section 1107(a) of the Bankruptcy Code. Moreover, section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary and appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

5

17. Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan. However, courts in the Third Circuit have found that a sale of a debtor's assets should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business judgment exists for such a sale. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.,* 242 B.R. 147, 153 (D. Del. 1999); *In re Del. & Hudson Ry. Co.,* 124 B.R. 169, 175-76 (D. Del. 1991) (applying the "sound business purpose test" set forth in *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1071 (2d Cir. 1983)).

18. Courts typically consider the following four factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was given to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith. *See In re Weatherly Frozen Food Group, Inc.*, 149 B.R. 480, 483 (Bankr. N.D. Ohio 1992); *Del. & Hudson Ry.,* 124 B.R. at 176; *In re Phoenix Steel Corp.,* 82 B.R. 334, 335-36 (Bankr. D. Del. 1987); *In re Titusville Country Club*, 128 B.R. 396, 399 (Bankr. W.D.Pa.1991).

19. In this case, all of those factors have been or will be met. There is a sound business justification for the Sale because more value for creditors and the estate will be realized from the Sale of the Real Property, while the Debtor shall be able to remain as a tenant in the warehouse, allowing the business to operate as a going concern. Further, the notice provision will have been met because the Sale will be advertised to known potential bidders, and all parties-in-interest in the Debtor's bankruptcy case will receive notice of the Sale. Moreover, the Debtor will receive

6

the highest possible price by selling the Real Property to Buyer, subject to higher and better offers in open court. Finally, the parties here are acting in good faith because the broker vetted the Real Property for months before and after the bankruptcy filing, plus the Sale will be moved in open court, and the Sale Agreement will be subject to higher and better offers.

20. The Buyer is not affiliated with the Debtor or its officers, directors, parent or affiliates. The Debtor's attorneys were extensively involved in the negotiation of the Sale Agreement, as were the Buyer's advisors. The Debtor, therefore, requests that the Court make a finding that the Buyer or, in the alternative, the high bidder, has purchased the Real Property in good faith within the meaning of section 363(m) of the Bankruptcy Code.

21. Additionally, the Debtor should be able to sell the Real Property free and clear of all liens, claims, interests and encumbrances because the requirements of section 363(f) of the Bankruptcy Code have been or will be satisfied. Pursuant to that statute, a debtor-in-possession may sell property under section 363(b) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

    (i)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;

    (ii)    such entity consents;

    (iii)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    (iv)    such interest is in *bona fide* dispute; or

    (v)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

22. Because section 363(f) of the Bankruptcy Code is stated in the disjunctive, satisfaction of any one of its five requirements will suffice to warrant approval of the proposed

7

sale of the Business. *Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV,* 209 F.3d 252, 257 (3d. Cir. 2000) (discussing how section 363(f) of the Bankruptcy Code authorizes the sale of a debtor's assets free and clear of all liens, claims and interests if "any one of [the] five prescribed conditions" is met); *In re Kelistrom Indus., Inc.,* 282 B.R. 787, 793 (Bankr. D. Del. 2002) (stating that a court may approve a sale "free and clear" provided at least one of the subsections of section 363(f) is met); *see also DVI, Inc.,* 306 B.R. 496, 503 (Bankr. D. Del. 2004).

23.  Finally, in order to ensure the smooth facilitation of the Sale, Debtor requests that the Court waive the fourteen (14) day stay set forth in Bankruptcy Rule 6004(h). Courts in this district have approved such requests so long as there is a "business need" for same. *See, e.g., In re Grand Prix Associates, Inc.*, No. 09-16545 (DHS), 2009 WL 1850966 at *8 (Bankr. D.N.J. Jun. 26, 2009). Here, there is a "business need" for the stay waiver because it is imperative that the Sale close as soon as possible so that the Debtor's customers receive continuous, uninterrupted care. The Debtor is experiencing cash flow problems and, unless the stay is waived, it may not have the resources to continue to operate and fulfill all of its financial and customer obligations.

## **NOTICE, PRIOR REQUEST AND WAIVER OF BRIEF**

24.  Notice of this Motion has been given to (a) the United States Trustee for the District of New Jersey; (b) counsel for MFC; (c) PRC; (d) counsel for CGRC; (e) twenty (20) largest unsecured creditors; (f) all parties that have requested notice in this case; (g) counsel for the Buyer and (h) all entities known to the Debtor to have expressed a *bona fide* interest in acquiring the Real Property. The Debtor submits that no other or further notice is required.

25.  No previous motion for the relief sought herein has been made to this or to any other court.

26. As no novel issue of law is raised and the relevant authorities relied upon by the Debtor are set forth herein, the Debtor respectfully requests that the requirement of D.N.J. LBR 9013-2 of filing a brief be waived.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter the proposed order submitted herewith (a) authorizing the Sale of the Debtor's Real Property to Buyer, (b) approving the form and manner of notice of the Sale; (c) approving the Debtor's lease of a certain portion of the warehouse facility from the Buyer of the Real Property; and (d) granting such other and further relief requested herein and/or as this Court deems just and proper.

Dated: November 18, 2013

Respectfully submitted,

**TRENK, DIPASQUALE,**
**DELLA FERA & SODONO, P.C.**
*Attorneys for Debtor and*
*Debtor-in-Possession*


By:    /s/ Thomas M. Walsh
        Thomas M. Walsh

809949_1